CHARLES C. CORRELL, JR. (SBN: 258085)
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*Attorney for Defendants*
CHEVRON U.S.A. INC. and
UNION OIL COMPANY OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| ORANGE COUNTY WATER DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>UNOCAL CORPORATION, *et al.*,<br><br>Defendants. | CASE NO. SACV03-01742 JLS (AN)<br><br>**JOINT STATUS REPORT** |

## JOINT STATUS REPORT

Pursuant to the Court's April 15, 2016 Order (Dkt. No. 93), Plaintiff Orange County Water District (the "District") and Defendants Chevron U.S.A. Inc., Union Oil Company of California, ConocoPhillips Company, Tosco, Exxon Mobil Corporation, ExxonMobil Oil Corporation, and G&M Oil (collectively, "Defendants") file this Joint Status Report.

## I.
## PROCEDURAL HISTORY

The District filed its original complaint on May 6, 2003, in the Orange County Superior Court.[1] Defendants removed the case to the Central District of California, and it was assigned to Judge James Selna. The case was related to another case that was then pending in the Central District, *Crescenta Valley Water District v. Exxon Mobil Corp., et al.*, U.S.D.C.C.D. Cal. Case No. CV 07-02630 JVS (ANx).[2]

The case was subsequently transferred to a multidistrict litigation proceeding in the Southern District of New York entitled *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, MDL No. 1358 (the "MDL"). (See June 16, 2004, JPML Transfer Order.)

While in the MDL, the case was selected as one of four initial focus cases in the MDL in which discovery would proceed. (See October 19, 2004, Case Management Order #4.) The case involved a substantial number of releases sites, so after initial discovery, the District and Defendants selected "focus" sites for

---

[1] OCWD filed its Third Amended Complaint on March 21, 2008 ("TAC"), which is the operative complaint in this matter and is attached hereto as Exhibit A. As discussed below, the MDL court has issued several rulings that affect these claims.

[2] The *Crescenta Valley* case was subsequently remanded to this Court, which conducted additional pre-trial activities, including *motions in limine* and a Daubert motion related to plaintiff's expert, Stephen Wheatcraft.

trial. The parties conducted additional fact and expert discovery with respect to the focus sites. Fact discovery closed in 2010, and expert discovery closed in January 2012. The MDL Court then heard and ruled upon certain dispositive motions.

The last of these dispositive motions was a motion by defendants Atlantic Richfield Company, Inc., BP West Coast Products LLC, BP Products North America Inc., Equilon Enterprises LLC, Shell Oil Company, Inc., and Texaco Refining and Marketing Inc., asking the MDL Court to find that earlier settlements between these defendants and the Orange County District Attorney were *res judicata* as to the District's claims. The MDL Court granted this motion, and that ruling is currently on appeal to the Second Circuit. The Parties anticipate that briefing related to this appeal will be completed this summer.

The MDL Court then submitted a suggestion of remand to the Judicial Panel on Multidistrict Litigation (JPML) asking the Panel to remand the focus sites for trial. The MDL Court retained jurisdiction over the remainder of the case. The JPML accepted the suggestion of remand for trial and the focus sites were transferred back to this Court and assigned to Judge Selna. *See Orange County*, Case No. 8:03-cv-01742, Dkt. No. 64. Certain Defendants filed a notice of related cases, and Judge Selna transferred the case to this Court.

## II.
## THE PARTIES

The District was created by the Orange County Water District Act (OCWDA) in 1933. *See* California Water Code, Appendix 40-1 through 40-78. The District manages groundwater in a 270 square mile geographic area in the North and Central part of Orange County. According to the District, the groundwater basin (the "Basin") managed by the District supplies approximately 75 percent of the water needed for more than 2.4 million residents and thousands of businesses. Also according to the District, the District replenishes the Basin, ensures water reliability and quality, and prevents seawater intrusion. The District

claims that it recharges approximately 217,594 acre feet of water to the Basin per year, much of it produced by its Groundwater Replenishment System. (*See generally* TAC (Ex. A) at 1-6.)

Defendants are owners and operators of gasoline stations within the District's boundaries, and several Defendants are or were refiners and distributors of gasoline in California as well. MTBE was added to gasoline in Southern California by some—but not all—refiners starting in the late 1980s. MTBE's use increased and included all refiners in 1992, which Defendants contend was done to comply with oxygenate requirements in the Clean Air Act Amendments. MTBE remained in gasoline continuously until 2003. (*See generally* TAC (Ex. A) at 7, 34, and 45.)

## III.

## **DESCRIPTION OF THE REMANDED CLAIMS**

The District claims that MTBE released from Defendants' gasoline stations is polluting substantial portions of the groundwater resources managed by the District. The District's complaint alleged the following claims for relief: (1) product defect (design defect and failure to warn), (2) negligence, (3) trespass, (4) nuisance, (5) violations of the Orange County Water District Act, and (6) declaratory relief. As discussed below, the MDL court has issued several rulings that affect these claims. The sites remanded to this Court, along with the associated Defendant(s) and claims, are specified in the U.S. Judicial Panel on Multidistrict Litigation's Separation of Claims and Conditional Remand Order, Attachment A (Suggestion to Remand), attached hereto as Exhibit B.

A. *"Focus Plumes" and Stations*

Initial discovery in this case was limited to twenty "Focus Plumes"—the District selected ten plumes and Defendants selected ten. Some of the alleged plumes contained one gasoline station, while others contained multiple gasoline stations. The parties later decreased the number of focus plumes to ten (five for

each side). The sixteen Remanded Sites are all "Focus Sites" associated with one of the ten "Focus Plumes." Fact discovery on these sites closed in August 2010.

### Defendants' Position

The stations at issue in this case have all been remediated, and many of the stations have received regulatory closure. Defendants contend regulatory closure means that the relevant regulatory authorities have determined that these sites do not pose a threat to the environment and no further mitigation or remediation is required.

### The District's Position

The District contends that sites that have received regulatory closure still pose a threat to the environment and may require further restoration. The District also contends that regulatory closure is narrow and limited in scope and not intended to indicate the absence of harm, particularly offsite harm. In addition, the District contends that any evidence developed after the close of discovery, including evidence related to post-discovery remediation or closure, is not admissible at trial. Opening the door to post-discovery evidence would inevitably lead to a slippery slope of new evidence, followed by new discovery, including revision of expert reports, that would delay trial indefinitely.

**B.  Key Summary Judgment Holdings**

The MDL court in the Southern District of New York heard a number of motions and issued the following key rulings:

- Statute of limitations. The MDL court held that the statute of limitations barred all of the District's products liability, negligence, permanent nuisance, and permanent trespass claims at all stations where there was an MTBE detection of five parts per billion ("ppb") or higher in a groundwater monitoring well associated with the station before May 6, 2000. Based on that ruling, the MDL Court adjudicated these claims at all but two of the remaining trial sites. *See In re: MTBE Prod. Liab. Litig.,* 676 F. Supp. 2d

139 (S.D.N.Y. 2009) ("2009 Order"), attached as Exhibit C.

- <u>Orange County Water District Act ("OCWD Act")</u>. The MDL court held that the District had not incurred any "remedial costs" within the meaning of the OCWD Act, and thus dismissed the OCWD Act claims at all of the trial sites. *See In re: MTBE Prod. Liab. Litig.,* 2011 WL 2565771 (S.D.N.Y. June 20, 2011) and *In re: MTBE Prod. Liab. Litig.,* 2011 WL 5075148, at *5 (S.D.N.Y. Oct. 25, 2011) (together the "2011 Orders"), attached collectively as Exhibit D; *See In re: MTBE Prod. Liab. Litig.,* 67 F. Supp. 3d 619, 634-35 (S.D.N.Y. 2014) ("2014 Order"), attached as Exhibit E.

- <u>Trespass</u>. The MDL court held that the District does not have an exclusive right to the drinking water in its territory and therefore dismissed OCWD's trespass claims at all of the trial sites. *See* 2011 Order (Ex. D) at *5.

- <u>Continuing nuisance</u>. The MDL court held that, where a defendant both owned the underground storage tanks ("USTs") at a gasoline station and supplied the station with gasoline, that Defendant was a "substantial factor" in causing any MTBE contamination at the station. 2011 Orders (Ex. D). The District, however, sought a broader order that the contamination was interfering with the District's use of the water, but the MDL court denied that request because the District had not submitted sufficient evidence with its motion. 2011 Orders (Ex. D). Later, the MDL court granted summary judgment for Defendants on continuing nuisance claims where a Defendant did not own and did not operate a site. *See* 2014 Order (Ex. E).

C. ***Status of Remanded Claims.***

The JPML remanded the District's continuing nuisance claims at the focus sites, as well as the District's strict liability and negligence claims at two Chevron stations. There is a dispute between the parties as to the propriety of the District's declaratory relief claim, which may need to be resolved by the Court. The parties prepared a matrix that identifies which claims remain against which Defendants at

each site. (*See* Exhibit B hereto, Conditional Remand Order, Exhibit A (Suggestion to Remand) at Exhibit 1.) The parties have stipulated to ownership and supply issues to streamline the claims at each site. (*See* July 16, 2014, Case Management Order #116, attached as Exhibit F.)

## IV.

## PRETRIAL CONSIDERATIONS AND TRIAL PLAN

### A. *Remaining Pretrial Issues*

#### 1. Motion Practice

Motions in Limine/Rule 702 Challenges. The Parties expect to file motions *in limine*, and Defendants intend to file Rule 702 challenges to the District's experts. Based on past experience, some of these motions are likely to be resolved through stipulation and agreement. The parties will be prepared to propose a specific briefing schedule with the Court at the first status conference.

Defendants' Position

One motion Defendants expect to bring is a motion to exclude the testimony of Dr. Stephen Wheatcraft, the District's groundwater modeling expert, on many of the same grounds that the Court excluded his primary opinions in the *Crescenta Valley* case.

Dispositive Motions.

The District's Position

Before this case was remanded for trial, the MDL Court directed the parties to file all dispositive motions for determination prior to remand. Defendants thus filed five summary judgment motions on at least thirteen separate grounds. This direction was clear and unequivocal. The focus sites were remanded for trial, not for additional dispositive motions. The fact that the MDL Court retained jurisdiction over the remainder of the case creates a real risk of inconsistent rulings should this Court begin considering dispositive motions. The Suggestion of Remand refers only to "pretrial" proceedings and does not include a reference to

further dispositive motions.

The MDL Court repeatedly stated, over Defendants' objections, that the District's Declaratory Relief claims remained in the case. Those claims were included in the Suggestion to Remand. In 2007, the year *after* the decision cited by Defendants, the MDL Court stated that "declaratory judgment is a flexible remedy that might be useful in this case . . . [i]f any of [the District's] remaining causes of action . . . are determined to require declaratory relief such relief remains available under those causes of action." March 2007 Opinion & Order at fn 26, attached as Exhibit G.

Dr. Wheatcraft's modeling work in this matter focused on showing that MTBE released to the Basin from focus sites, if not remediated, will impact drinking water wells. Two of the District's experts, as well as two District employees, have testified that, similar to Dr. Wheatcraft's testimony, if MTBE released to the Basin is not remediated, then it will impact drinking water wells within the Basin. And, unlike *Crescenta*, Dr. Wheatcraft's modeling work is not being used by another expert to estimate the costs of installing and operating wellhead treatment for MTBE. The MDL Court denied Defendants' motion to strike Dr. Wheatcraft's declaration filed in opposition to their summary judgment motion on injury.

Finally, the MDL Court rejected Chevron's claims that the District cannot prosecute strict liability and negligence claims against Chevron's two remanded sites. Chevron failed to seek reconsideration with the MDL Court. Chevron also failed to bring a supplemental summary judgment motion even though Chevron was given an opportunity to file any remaining dispositive motions prior to remand.

<u>Defendants' Position</u>

Defendants believe that the Court's rulings on certain Rule 702 motions or motions *in limine* could necessitate additional dispositive briefing. Defendants do

not believe that the motions that they propose risk inconsistent rulings between the MDL court and this court. For example, if the Court grants a motion to exclude all or some of the opinions of Dr. Wheatcraft, then a summary judgment motion on the District's continuing nuisance claims may be appropriate. In fact, the MDL court recognized this possibility in its previous summary judgment noting that: "Although defendants present substantial and relatively persuasive evidence that Dr. Wheatcraft's plume model cannot reliably trace gasoline from each individual station to a corresponding production well, their arguments are better suited for a *Daubert* motion challenging Dr. Wheatcraft's methodology than for a motion seeking a summary judgment dismissal." 2014 Order (Ex. E) at 631.

In addition, Defendants seek to move on the District's claim for declaratory relief. The MDL court granted a motion to dismiss on this claim in 2006. *In re: MTBE Prod. Liab. Litig.*, 457 F. Supp. 2d. 455 (S.D.N.Y. 2006) ("2006 Order"), attached as Exhibit H. Years later, as the case was approaching remand, the District argued that it should be able to seek declaratory relief as to the responsibility of Defendants for future remediation of MTBE contamination at sites at which they are found liable for continuing nuisance. At a status conference, the MDL court decided to include the declaratory relief claim on remand, subject to further motion practice in the trial court. *See* June 18, 2015 Status Conference Transcript, 33:12-19 and 51:01-14, attached as Exhibit I.

Chevron further notes that the District lacks competent evidence to sustain its product liability, permanent nuisance, and negligence claims at the two remanded Chevron sites. Chevron believes that these claims can and should be adjudicated before trial and looks forward to discussing with the Court the best way to do so at the initial Status Conference. Adjudicating these claims before trial will substantially increase judicial economy and trial efficiency.

Accordingly, Defendants request that the Court set a briefing schedule for all dispositive motions that will fall after the Court issues rulings on certain Rule 702

motions and motions *in limine*.

### 2. Mediation

The parties are willing to participate in mediation.

#### The District's Position

The District believes it has already provided Defendants sufficient information for purposes of mediation.

#### Defendants' Position

Prior to mediation, Defendants request that the District provide a proffer of the damages it intends to seek at trial on a station-by-station basis. This information will aid Defendants in assessing the value of the case prior to mediation and increase the chances of success at the mediation.

### B. *Trial Schedule*

The parties request that the Court set this case for trial on a docket that provides ample time to resolve the foregoing pretrial issues and that will provide the Court sufficient time to rule on key motions that have the potential to narrow the issues for trial.

#### The District's Position

The District anticipates that six months will be sufficient for pre-trial proceedings, and the trial will last approximately three months. The District's estimates of trial length assumes that the Court will not entertain additional dispositive motions. The District's estimates are also based on past MTBE trials, in both federal and state court. Defendants' assumption that relief is limited to a damage award for pre-trial expenditures and injuries ignores the availability of declaratory relief and the continuing nature of the injury.

#### Defendants' Position

In *Crescenta Valley*, trial was set to begin approximately 22 months after the initial status conference with this Court. This time was necessary to accommodate the remaining pretrial activities. Defendants believe that a similar time period will

be necessary here to complete the motion practice.

Defendants believe that the length of trial will depend, in part, on whether the District's permanent tort claims proceed at the two Chevron sites with the remaining remanded claims. If so, then based on counsel for the District's prior MTBE cases, Defendants believe that four months is a reasonable estimate for the length of trial (*i.e.*, 16 weeks for 16 stations). But the time needed will vary considerably because the proposed motions are expected to dramatically change the scope of issues, evidence, and witnesses needed at trial. In an effort to avoid the significant burdens that a four month trial would impose on the Court and the parties, as detailed below, Defendants have proposed several trial structures that would streamline the order of proof in the case and potentially dramatically reduce the amount of trial time needed to resolve the case.

Additionally, if the District's permanent tort claims at the two Chevron sites do not move forward at trial, then the Defendants estimate this case could take closer to four weeks.

### C.     Trial Structure

#### The District's Position

In all prior MTBE cases liability has been tried first, followed by damages, whether as a single trial or in a bifurcated process. This trial structure has both promoted settlement and led to jury verdicts that have been upheld on appeal. *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 725 F.3d 65 (2d Cir. 2013); *State of New Hampshire v. Exxon Mobil Corp.*, 126 A.3d 266 (2015). The District proposes that the jury return a special verdict with findings on liability and punitive damages. This approach has been used in a prior MTBE jury trial, and a comprehensive settlement followed the jury's decisions on these issues. This approach has another distinct advantage, Judge Scheindlin has said that once liability is determined in one jury trial in the MDL, the results should be applied to future phases of this case. The District's approach potentially

saves time in numerous future trials.

Defendants' novel trial structure has never been adopted or approved either by the MDL Court or any other trial court which has presided over an MTBE case. There is no basis for Defendants' assertion that their proposed trial structure will "streamline" or shorten trial. Since the District is required to prove that its damages are related to the wrongful conduct of Defendants, Defendants' approach makes no sense. Defendants cannot be suggesting that they would waive this requirement.

Chevron's request for a separate trial would be inconsistent with the Suggestion to Remand. Judge Selna previously denied Defendants' request to sever stations or Defendants, stating "severance would result in duplication of judicial resources, and would prove inefficient for the parties, particularly the Orange County Water District." April 4, 2016, Order of Recusal, attached as Exhibit J.

Defendants' proposal of trial structure on products liability ignores the traditional approach of including statute of limitations defenses in the same verdict form as liability.

### Defendants' Position

This case presents unique damages issues that were not present in other MTBE cases, and therefore the trial structure in those prior cases is irrelevant here. There is simply no reason to try liability alone first in this case.

There are, however, different trial structures that will streamline the case and minimize the burden on the Court, witnesses, and parties. Defendants propose three options:

First, Defendants propose separating the continuing nuisance claims from the product liability claims:

**Phase 1**: Jury determines the continuing nuisance claims completely for all sites and also, for the two alleged products liability stations,

whether there was a post-May 2000 release.

**Phase 2**: If the jury answers that there was not a post-May 2000 release, then there would be no Phase 2 trial. On the other hand, if the jury finds there was, then the District and Chevron would try the products liability claims at these two stations before the same jury.

Second, Defendants propose reverse bifurcation, with the issue of damages tried first. Defendants expect that the District lacks evidence of significant recoverable damages and that resolving the extent of the District's purported damages first will resolve the case either due to a lack of recoverable damages or settlement.

Third, Defendants propose severing Chevron and the two remanded Chevron sites to be tried separately.

DATED: May 9, 2016                           Respectfully submitted,

                                             KING & SPALDING LLP


                                             By: /s/ Charles C. Correll, Jr.
                                                  Charles C. Correll, Jr.

                                             *Attorney for Defendants*
                                             Chevron U.S.A. Inc. and Union Oil
                                             Company of California

LATHAM & WATKINS LLP

By: /s/ Matthew D. Thurlow
    Matthew D. Thurlow

*Attorney for Defendants*
ConocoPhillips Company, individually and as successor-in-interest to Tosco Corporation and Phillips Petroleum Corporation


SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/ Jeffrey J. Parker_____
    Jeffrey J. Parker
    Whitney Jones Roy

*Attorneys for Defendants*
Exxon Mobil Corporation and ExxonMobil Oil Corporation


ELKINS KALT WEINTRAUB REUBEN GARTSIDE, LLP

By: /s/ Kenneth A. Ehrlich
    Kenneth A. Ehrlich

*Attorney for Defendant*
G&M Oil Company

MILLER AXLINE

By: /s/ Mike Axline
    Mike Axline

*Attorney for Plaintiff*
Orange County Water District

# CERTIFICATE OF SERVICE

I hereby certify that on the <u>9th</u> day of May, 2016, a true, correct and exact copy of the foregoing document was filed via CM/ECF and served on all counsel via CM/ECF and File&ServeXpress.

<u>/s/ Charles C. Correll, Jr.</u>
Charles C. Correll, Jr.