1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   JEFFREY J. PARKER, Cal. Bar No. 155377
3  jparker@sheppardmullin.com
   WHITNEY JONES ROY, Cal. Bar No. 211541
4  wroy@sheppardmullin.com
   333 South Hope Street, 43rd Floor
5  Los Angeles, California 90071-1422
   Telephone:  213.620.1780
6  Facsimile:   213.620.1398

7  Attorneys for Defendant
   EXXONMOBIL OIL CORPORATION
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 SOUTHERN DIVISION

12

13  ORANGE COUNTY WATER              Case No. 8:03-cv-01742 CJC (ANx)
    DISTRICT,
14                                   *Assigned to:  Hon. Cormac J. Carney*
                 Plaintiff,
15                                   **DEFENDANT EXXONMOBIL OIL
          v.                         CORPORATION'S:**
16
    UNOCAL CORPORATION, et al.,      **(1)    NOTICE OF MOTION AND
17                                           MOTION *IN LIMINE* RE
                 Defendants.                 SCOPE OF DAMAGES;  AND**
18
                                     **(2)    MEMORANDUM OF POINTS
19                                           AND AUTHORITIES IN
                                             SUPPORT THEREOF**
20
                                     **Motion *in Limine* No. 4**
21
                                     *[Declaration of Whitney Jones Roy and
22                                   Proposed Order submitted concurrently
                                     herewith]*
23

24                                   Hearing Set Per Court Order
                                     Date:   February 6, 2017
25                                   Time:   3:00 p.m.
                                     Dept:  9B
26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.   RELEVANT BACKGROUND .............................................. 3

   A.   Defendants' Efforts to Obtain Damages Discovery from OCWD. ........ 3

   B.   Summary of Damages Sought by OCWD Against All Defendants ................................................................. 4

III.   THE SCOPE OF DAMAGES SHOULD BE LIMITED AT TRIAL............. 8

   A.   Damages Not Disclosed in Discovery Prior to the Discovery Cut-Off Date Should Be Excluded At Trial.................................................. 8

   B.   OCWD's Litigation Costs Should Be Excluded At Trial. .................... 10

   C.   Ordinary Business Costs Should Be Excluded At Trial. ...................... 13

   D.   OCWD Should Be Required To Link Damages To Plume 2 Station In Order For Such Evidence To Be Admitted At Trial. .......... 14

      1.   Causation Is A Necessary Element of Continuing Nuisance.................................................................. 14

      2.   OCWD's Distorted Theory Of Joint & Several Liability Cannot Overcome Its Obligation To Connect Specific Conduct To Specific Items of Damages. .................... 16

      3.   Past Costs Attributed To Stations Other Than Those In Plume 2 Should Be Excluded At Trial. ...................... 18

      4.   General Past Costs That OCWD Refuses To Allocate or Apportion to Plume 2 Should Be Excluded At Trial................ 19

   E.   Evidence Regarding "Future" Costs Not Supported By Expert Testimony Should Be Excluded At Trial.................................. 20

      1.   The Rules of Evidence Require That OCWD Provide Expert Testimony To Substantiate Its Future Damages Claims. .................................................................. 20

      2.   OCWD Failed To Designate An Expert Witness To Address OCWD's Claim For $34 Million................................. 21

      3.   OCWD's Lay Witness Employees Cannot Substantiate The $34 Million Claims Because They Will Only Provide Impermissible Speculation Regarding the Future Cost and Need for Monitoring Wells......................................... 22

IV.   CONCLUSION .................................................................. 24

1

# TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*California Orange Co. v. Riverside Portland Cement Co.*
5
  50 Cal. App. 522 (1920) ................................................................. 16, 17

6

*California v. Allstate Ins. Co.*
  45 Cal. 4th 1008 (2009)................................................................... 16
7

8

*California v. Kinder Morgan Energy Partners, L.P.*
  2016 U.S. Dist. LEXIS 15174 (S. D. Cal. Feb. 2, 2016) .................... 21
9

*Carrell v, Fred Olsen Line Agency, Ltd.*
10
  213 Cal. App. 2d 601 (1963) ........................................................... 15

11

*Chaparkas v. Webb*
12
  178 Cal. App. 2d 257 (1960) ........................................................... 15

13

*Connor v. Grosso*
14
  41 Cal. 2d 229 (1953) ...................................................................... 17

15

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*
16
  482 U.S. 437 (1987) ......................................................................... 12

17

*Griffith v. Kerrigan*
18
  109 Cal. App. 2d 637 (1952) ........................................................... 18

19

*Helm v. United States*
  2015 U.S. Dist. LEXIS 15472 (E.D. Cal. 2015) ............................... 15
20

21

*Hilborn v. Metropolitan Group Prop. & Cas. Ins. Co.*
  2014 U.S. Dist. LEXIS 113996 (D. Idaho 2014) .............................. 11
22

23

*I-CA Entertainment, Inc. v. Palram Americas, Inc.*
  235 Cal. App. 4th 257 (2015).................................................... 17, 18

24

*Jones v. Travelers Cas. Ins. Co. of America*
25
  304 F.R.D. 677 (N.D. Cal. 2015) ................................................ 8, 10

26

*McGlinchy v. Shell Chemical Co.*
27
  845 F.2d 802 (9th Cir. 1988) ........................................................... 22

28

*In re MTBE*
        279 F.R.D. 131 (S.D.N.Y 2011)................................................................4, 9, 10

*In re MTBE*
        67 F. Supp. 3d 619, 634 (S.D.N.Y. 2014)...........................................4, 9, 14

*In re MTBE*
        824 F.Supp.2d 524 (2011).................................................11, 13, 14, 16

*Stockton East Water Dist. v. United States*
        109 Fed. Cl. 760 (Fed. Cl. 2013).............................................................22

*United States v. Boyce*
        148 F.Supp.2d 1069 (S.D. Cal. 2001)........................................................8

*Vanderbilt Growth Fund, Inc. v. Superior Court*
        105 Cal. App. 3d 628 (1980)....................................................................15

*Whitserve, LLC v. Computer Packages, Inc.*
        694 F.3d 10 (Fed. Cir. 2012)....................................................................10

*Wong v. Regents Of University Of California*
        379 F.3d 1097 (9th Cir. 2004)....................................................................9

*Yeti By Molly, Ltd. v. Deckers Outdoor*
        259 F.3d 1101 (9th Cir. 2001)....................................................................9

Statutes

28 U.S.C. § 1821.................................................................................................12

28 U.S.C. § 1920.................................................................................................12

California Civil Code § 1431................................................................................16

Cal. Water Code Appendix § 40-2 .....................................................................13

Cal. Water Code Appendix § 40-8 .....................................................................13

Cal. Water Code Appendix § 40-20.6 .................................................................13

Cal. Water Code Appendix § 40-25 ....................................................................13

Rules

Fed. R. Civ. Proc. 26...........................................................................................8, 9

SMRH:480325262.2

Fed. R. Civ. Proc. 37(c)(1) ............................................................................ 9

Fed. R. Civ. Proc. 54 ............................................................................... 2, 10

Fed. R. Evid. 402 ........................................................................................ 10

Fed. R. Evid. 701 ........................................................................................ 22

Fed. R. Evid. 702 ................................................................................... 20, 22

Central District Local Rule 54-1 ................................................................. 10

<u>Other Authorities</u>

CACI No. 2013 ............................................................................................ 15

CACI No. 2021 ............................................................................................ 14

CACI No. 3900 ............................................................................................ 15

Restatement 2d. of Torts, § 822 .................................................................. 14

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2017 at 3:00 p.m..[1] or as soon thereafter as the matter may be heard in Courtroom 9B, 9th Floor of the above-entitled Court, located at 411 W. Fourth St., Santa Ana, California, Defendant ExxonMobil Oil Corporation ("Mobil" or "Defendant") will, and hereby does, move this Court for an order narrowing the scope of damages evidence at trial. Specifically, Mobil seeks an order excluding from trial in this matter any and all testimony, references to testimony, evidence, or arguments regarding the following:

1. Damages not disclosed prior to the discovery cutoff;
2. Litigation costs;
3. OCWD's ordinary business costs;
4. Damages not causally linked to the Plume 2 stations; and
5. Future costs not supported by expert testimony.

This Motion is made on the following grounds. First, OCWD should be precluded from offering evidence of damages it did not disclose prior to the discovery cut-off, in violation of Federal Rules of Evidence 26(a) and 37(c) and the MDL court's rulings and guidance in this case. It would be unfair and prejudicial to Mobil if OCWD were permitted to introduce such evidence that Mobil has never had an opportunity to investigate or examine.

Second, OCWD should be barred from introducing evidence of its litigation costs at trial. Throughout this litigation, OCWD has routinely included such costs

---

[1] This hearing date and time is set pursuant to the Court's September 2, 2016 Order. (Docket No. 121.)

1   as part of its requested damages even though costs recoverable by the prevailing

2   party are awarded by the Court, not the jury.  Furthermore, to the extent OCWD's

3   litigation costs include its own internal operating costs in dealing with this litigation,

4   such costs are not recoverable at all pursuant to Federal Rule of Civil Procedure

5   54(d).

6

7     Third, OCWD should be precluded from introducing evidence of its ordinary

8   business costs at trial because OCWD is not permitted to recover such costs under

9   the OCWD Act as well as under the MDL court's rulings.

10

11     Fourth, OCWD should be required to link its damages to the Plume 2 stations

12   in order for such evidence to be admitted at trial.  Causation is a necessary element

13   of continuing nuisance and OCWD cannot subvert this requirement by asserting

14   some distorted theory related to expenses for other plumes or areas, such as joint

15   and several liability.  There are a number of categories of damages that OCWD has

16   asserted only against other stations and not against the Plume 2 stations, and it

17   would be unfair to permit OCWD to introduce such evidence against Mobil.

18   Furthermore, OCWD seeks additional categories of damages that it refuses to

19   apportion or otherwise allocate to specific stations or plumes.  It would be unfair

20   and prejudicial to Mobil, and unduly confusing and time-consuming for the jury, to

21   allow OCWD to seek the entirety of those damages against Mobil in this trial.

22   Accordingly, OCWD should be limited to seeking from Mobil only such damages

23   attributable to the Plume 2 stations.

24

25     Fifth, OCWD should not be permitted to introduce evidence of "future"

26   damages that are not supported by expert testimony.  Specifically, in written

27   discovery responses OCWD alleged that it would have to incur $32 or $34 million

28   in future costs to install monitoring wells throughout the District.  Those alleged

Case No. 8:03-cv-01742 CJC (ANx)
*MOTION IN LIMINE NO. 4 RE SCOPE OF DAMAGES*

1  costs should be excluded because they are not supported by expert testimony.

2  Moreover, OCWD's lay witnesses are, by their own admission, not qualified to

3  testify regarding these damages and, in any event, failed to produce expert reports

4  setting forth any expert opinions on damages.[2]

5

6       This Motion is based on this Notice of Motion and attached Memorandum of

7  Points and Authorities, the concurrently filed Declaration of Whitney Jones Roy,

8  and any further oral and documentary evidence as may be presented during

9  argument on the Motion.

10

11       Defendants have complied with Central District Local Rule 7-3's meet and

12  confer obligations.  (Declaration of Whitney Jones Roy ("Roy Dec."), ¶¶ 18-22,

13  Exs. 24-26.)

14

15  Dated:  January 9, 2017

16                  SHEPPARD, MULLIN, RICHTER & HAMPTON

17                  LLP

18            By           */s/ Whitney Jones Roy*

19                    JEFFREY J. PARKER

20                   WHITNEY JONES ROY

21                    Attorneys for Defendant

                 EXXONMOBIL OIL CORPORATION

22

23

24

25

26  _____

27  [2]      These lay witnesses and any expert opinions they may offer are the subject of
Mobil's Motion *In Limine* No. 8 To Prevent Roy Herndon And David Bolin From

28  Testifying As Experts.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant ExxonMobil Oil Corporation ("Mobil" or "Defendant") seeks an order from the Court narrowing the scope of damages evidence at trial.  Over the course of litigation, OCWD has repeatedly taken the position that it is entitled to recover various costs for which the law does not permit recovery.  It would be unfair and unduly prejudicial to Mobil, confusing to the jury, and a waste of valuable time and resources to allow OCWD to introduce evidence at trial of costs that are not recoverable in this case.

OCWD's damages evidence should be limited in five ways.  First, OCWD should be precluded from offering evidence of damages it did not disclose prior to the discovery cut-off.  The Federal Rules of Civil Procedure affirmatively require all parties in litigation to promptly supplement or amend discovery disclosures and preclude a party who has failed to do so from using such evidence at trial.  The MDL court confirmed this when it refused to consider evidence of damages not disclosed in discovery and instructed OCWD that it must re-open discovery if it intended to seek such damages at trial.  OCWD never did so.  In addition to being a violation of the FRCP and the MDL court's rulings, it would also be unfair and prejudicial to Mobil if OCWD were permitted to introduce evidence at trial that Mobil has never had an opportunity to investigate or examine.

Second, OCWD should be barred from introducing evidence of its litigation costs at trial.  OCWD routinely includes such costs as part of its requested damages.  However, litigation costs are only recoverable *if* OCWD is the prevailing party, in which case recoverable litigation costs would be awarded by the Court, not the jury.  Thus, it would be improper to submit such evidence to the jury and runs the unnecessary risk of prejudicing and confusing the jury as to the costs it may properly attribute to Mobil in the event it finds Mobil to be liable for OCWD's continuing nuisance claim.  Additionally, to the extent OCWD is attempting to

-1-

recover its own internal operating costs in dealing with this litigation, such costs are not recoverable pursuant to Federal Rule of Civil Procedure 54(d) and, therefore, should be excluded at trial.

Third, Mobil seeks an order precluding OCWD from introducing evidence of its ordinary investigation costs at trial. The OCWD Act does not permit OCWD to recover its investigation costs; only its remediation costs. The MDL court has confirmed this rule on two separate occasions in this case. Despite the clear law and rulings to the contrary, OCWD continues to seek such costs at trial. However, water quality investigation is part of OCWD's routine and ongoing business. Expenses associated with water quality investigation are not the result of any supposed nuisance created by alleged MTBE contamination—they are ordinary business costs that OCWD is obligated to incur to fulfill its statutory responsibilities. Accordingly, these costs are not recoverable as damages here and OCWD should be precluding from offering evidence of such costs. Although the OCWD Act does not preclude other claims, if a cost is something OCWD incurs in the ordinary course of business pursuant to its enabling Act, it cannot be a damage OCWD was required to incur because of a nuisance.

Fourth, OCWD should not be permitted to offer damages evidence against Mobil that it cannot link to the Plume 2 stations. Causation is a required element in proving continuing nuisance and OCWD's damages claims are rife with costs it has refused to apportion or allocate to particular stations or plumes, making a strategic decision to structure its claims to seek joint and several liability. OCWD incorrectly contends it may seek all of its MTBE-related costs against Mobil, under some distorted theory of joint and several liability. Contrary to OCWD's assertion, Mobil cannot be liable for alleged injury caused by other defendants where OCWD has never asserted that the contamination from each defendant has commingled into a single plume and thus contributed to a single, indivisible harm to OCWD. Moreover, OCWD seeks damages that it has expressly attributed to stations *other*

*than* those in Plume 2. It would be unfair to permit OCWD to seek recovery of damages against Mobil that OCWD has expressly attributed to other stations and not to Mobil's Plume 2 stations.  Furthermore, OCWD seeks general damages that it has refused to apportion or otherwise allocate to Plume 2.  It would be unfair and prejudicial to Mobil, and unduly confusing and time-consuming for the jury, to allow OCWD to introduce evidence of these damages against Mobil unless it has allocated or otherwise apportioned those damages to Plume 2.

Fifth, OCWD should be barred from introducing evidence of its claim of $32 million or $34 million in supposed "future" costs it claims it will incur to install monitoring wells.  The law requires such damages to be supported by expert testimony, and OCWD has not designated any expert witnesses to address these damages.  OCWD's remediation experts Messrs. Stollar and Brown, did not include these costs in their expert reports and disclaimed any knowledge of them at deposition.  Moreover, OCWD's lay witnesses are, by their own admission, not qualified to testify regarding these damages and, in any event, failed to produce expert reports setting forth any expert opinions they intend to assert with regard to these damages.

## II.  RELEVANT BACKGROUND

### A.  Defendants' Efforts to Obtain Damages Discovery from OCWD.

Defendants have worked diligently to gather information regarding OCWD's claimed damages throughout discovery this case.  On November 7, 2008, OCWD served responses to Defendants Unocal and Chevron's First Set of Interrogatories and Request for Production Related to Damages.  (Declaration of Whitney Jones Roy ("Roy Dec."), Ex. 1.)  On July 2, 2010, OCWD served Responses to Certain Defendants' Third, Fourth, Fifth, Sixth, Seventh and Eighth Set of Interrogatories (Re: Cost Recovery At Focus Plumes 1, 2, 3, 8 and 9).  (*Id.*, Ex. 2.)  In both sets of discovery responses, OCWD sets forth a description of its claimed damages.

1  Discovery closed on August 31, 2010.  (*Id.*, ¶ 5.)

2      On July 25, 2011, as part of briefing on a pending summary judgment motion,

3  OCWD submitted a declaration from its in-house hydrogeologist Roy Herndon

4  setting forth new costs allegedly incurred by OCWD that had not previously been

5  disclosed prior to the Discovery Cut-Off.  (Roy Dec., Ex. 4.)  Defendants objected

6  to these newly disclosed costs and, on October 25, 2011, the MDL court refused to

7  consider the new costs, holding that "If OCWD seeks to recover these costs it may

8  have to re-open discovery and file a new motion for summary judgment.  OCWD

9  may raise this issue at the next Case Management Conference scheduled for

10  November 21, 2011."  *In re MTBE*, 279 F.R.D. 131, 138 n.61 (S.D.N.Y 2011).

11  OCWD *never* sought leave to re-open discovery.  *See In re MTBE*, 67 F. Supp. 3d

12  619, 634 (S.D.N.Y. 2014) ("[The District] relies on vague discovery responses and

13  an expert declaration that the Court previously declined to consider in the prior

14  summary judgment briefing on this issue…. The District failed to follow the Court's

15  instructions in my prior ruling, in which I noted that the District 'may have to re-

16  open discovery' in order to identify specific, recoverable costs.  But the District

17  never sought leave to do so….")

18      On July 24, 2012, OCWD served Supplemental Responses to Defendants

19  Unocal and Chevron's First Set of Interrogatories and Request for Production

20  Related to Damages.  (Roy Dec., Ex. 5.)  OCWD has also produced documents in

21  response to Defendants' written discovery requests, which are detailed in OCWD's

22  Supplemental Responses.  (*Id.*, ¶ 9.)

23      Defendants also deposed OCWD's Federal Rule of Civil Procedure 30(b)(6)

24  witness regarding costs incurred in July and August 2012.  (Roy Dec., ¶ 10; Exs. 11-

25  12.)

26  **B.   Summary of Damages Sought by OCWD Against All Defendants.**

27      With respect to the continuing nuisance claim, OCWD seeks to recover

28  "compensatory and exemplary damages" as well as "equitable relief in the form of

an order requiring Defendants to abate the nuisance properly as to the District."

(3AC, ¶ 100.)  OCWD is seeking "remedial investigation and assessment costs" already incurred between 2004 and 2012.  (Roy Dec., Ex. 5, p. 164, 218-245 [Supp. Resp. p. 6 & Ex. 1 thereto]; Ex. 4, pp. 152-153, 156 [Herndon Dec. ¶ 8, 15].)  Included in that total are the following costs:

| Amount | Description |
|---|---|
| $33,416 | Investigation costs for the G&M Oil #4 station in Plume 1.<br>➔ Not Plume 2. |
| $600,000 | Paid to Komex H20 Science, Inc., a litigation consultant, for preliminary investigation at 40 stations.<br>➔ Not allocated to particular stations or plumes. |
| $87,563 | Paid to Komex H20 Science, Inc., a litigation consultant, for preliminary investigation at 40 stations.<br>➔ Not allocated to particular stations or plumes. |
| $2,551,202 | Paid to Hargis + Associates, a litigation consultant, for preliminary investigation at 40 stations.<br>➔ Not allocated to particular stations or plumes. |
| $94,778 | Testing and analysis of water sampling by Friedman & Bruya, a litigation consultant, to investigate existence of MTBE.<br>➔ Not allocated to particular stations or plumes. |
| $1,643 | Paid to Christian Zarn, a litigation consultant, for preliminary investigation at 40 stations.<br>➔ Not allocated to particular stations or plumes. |
| $470,145 | Paid to X-NTH, Inc./ Exp. U.S. Services, Inc., a litigation consultant, for preliminary investigation at 40 stations.<br>➔ Not allocated to particular stations or plumes. |
| $1,624,281 | OCWD internal hydrogeology, water quality, laboratory, and administrative staff time, analytical time, sampling costs, equipment use, and overhead.<br>➔ Not allocated to particular stations and includes unrecoverable operating costs. |
| $3,000,000 | Bore hole drilling costs for 14 stations (one of which was Mobil #18-JMY).<br>➔ First disclosed a year after the close of discovery.<br>➔ MDL court barred unless OCWD successfully moved to re-open discovery, which it did not do. |

(Roy Dec., Ex. 5, p. 164-185 [Supp. Resp. pp. 6-27]; Ex. 4, pp. 152-153, 156 [Herndon Dec. ¶ 8, 15].)

In addition, OCWD claims that it will incur the following future costs:

| Amount | Description |
| --- | --- |
| $9,499,893[3] | Alleged future investigation costs at Mobil #18-HDR ($9,420,843) and Mobil #18-JMY ($79,050). |
| $2,900,000[4] | Alleged future installation of monitoring wells. ➔ OCWD has not designated any expert who can testify regarding these costs. |

(Roy Dec., Ex. 5, pp. 186-209 [Supp. Resp. pp. 28-51].)

Throughout the course of discovery, defendants repeatedly requested that OCWD identify the alleged damages it claimed to have incurred throughout its entire 270 square mile territory on a per station or per plume basis.  (*Id.*, pp. 162, 185-186, 211-215 [Supp. Resp. pp. 4, 27-28, 53-57].)  With only a few exceptions, OCWD responded with a listing of all costs and/or damages it seeks and refused to apportion or allocate them to particular stations or plumes.  (*See, e.g., id.*, pp. 162-164, 170-171 [Supp. Resp. pp. 4-6, 12-13].)  OCWD's responses stated:

> The District has not allocated the costs below to a particular Bellwether Plume or Station as the District contends that *many* of these costs apply to the MTBE/TBA remedial investigation, assessment and remediation project as a whole…. *[T]o the extent any particular charge can be allocated*, the information would be contained in these materials.  The District is not, however, required to conduct such an analysis in response to this interrogatory.

(*Id.*, p. 163 [Supp. Resp. p. 5] (emphasis added).)  Additionally, with respect to the Komex, Hargis + Associates, and Worley Parsons invoices identified in the chart above, OCWD stated "The District has not specifically allocated its costs for these

---

[3]     OCWD's experts opined that future costs at 34 stations would be $28,837,081, but they allocated such costs by station.

[4]     OCWD's supplemental interrogatory responses indicate that it expects to install 5 monitoring wells at each station at a cost of $250,000 per station, plus 6 intermediate wells at each plume at a total cost of $2,400,000.  (Roy Dec., Ex. 5, p. 202 [Supp. Resp. p. 44].)  At the time those responses were served there were three stations in Plume 2.  As such, the responses sought $750,000 for monitoring wells at 3 stations in Plume 2, plus $2,400,000 for intermediate wells.  (*Id.*)  Because only 2 stations remain at issue in Plume 2, the total amount for this category of costs is reduced to $500,000 for monitoring wells at 2 stations, plus $2,400,000 for intermediate wells for the plume.

consultants to prepare Phase I Remedial Assessments, nor has the District allocated these costs by Bellwether Plume or specific station." (*Id.*, pp. 170-171 [Supp. Resp. p. 12-13].)  Furthermore, throughout its responses, OCWD identifies investigations it claims its staff undertook with respect to specific stations, but states that "The District has not separately allocated a portion of its approximately $1,624,281 internal staff time and other costs to this particular investigation." (*Id.*, 172-174, 181-183 [Supp. Resp. pp. 14-16, 23-25].)

Defendants also questioned OCWD's 30(b)(6) damages designee, Roy Herndon, extensively about OCWD's ability to allocate damages to specific stations or plumes.  Mr. Herndon confirmed that, aside from a few isolated costs, OCWD cannot say how much in damages it has incurred or expects to incur in the future with respect to any particular defendant or station in this case.  (Roy Dec., Ex. 11, pp. 305-306 [7/26/12 Herndon Depo Tr. pp. 108:19-23, 109:1-22]; Ex. 12, pp. 328-331 [8/13/12 Herndon Depo Tr. pp. 360:24-362:24, 400:2-403:24, 405:2-408:17].)  Mr. Herndon further confirmed that, with only a few exceptions, OCWD is unable to identify its staff or consultants' time that was spent on particular stations.  (Roy Dec., Ex. 11, pp. 313-315 [7/26/12 Herndon Depo Tr. pp. 140:13-142:25, 194:24-195:17].)  Mr. Herndon further stated that both OCWD's staff time and its consultants' time may have involved investigation associated with sites not at issue in this litigation and OCWD has no way of identifying or tracking that information.  (*Id.*, pp. 307-312 [7/26/12 Herndon Depo Tr. pp. 115:17-25, 116:24-118:15, 124:20-129:17, 131:18-133:11].)  Mr. Bolin was also unable to allocate damages to any particular station.  (Roy Dec., Ex. 14, pp. 340-341 [10/20/08 Bolin Depo Tr. pp. 1194:4-1195:20, 1222:12-1223:5]; Ex. 15, pp. 346-347 [9/3/10 Bolin Depo Tr. pp. 1929:24-1931:20].)

During the meet and confer process regarding this motion, OCWD has taken the position that it is entitled to recover all costs incurred prior to the entry of judgment in this matter based on the Court's November 3, 2016, summary judgment

ruling.  (Roy Dec., Ex. 25, p. 622 [12/7/16 Letter p. 1].)  It appears that OCWD is

taking the position that it can recover any costs incurred prior to the entry of

judgment, regardless of whether such costs were disclosed in discovery and

regardless of whether OCWD sought leave of court to claim such previously

undisclosed damages.  The fact that a category of damages is recoverable under the

law does not mean a party can violate the FRCP and court orders requiring timely

disclosure and expert support, yet still recover such category of damages.

### III.  THE SCOPE OF DAMAGES SHOULD BE LIMITED AT TRIAL.

**A.**     **Damages Not Disclosed in Discovery Prior to the Discovery Cut-Off Date Should Be Excluded At Trial.**

OCWD should be barred from introducing evidence of damages that it failed

to properly disclose in discovery.  The Federal Rules of Civil Procedure impose

upon the parties a duty to supplement early disclosures and responses to discovery

demands to include later-acquired information.  Fed. R. Civ. Proc. 26(e).  The duty

to supplement arises "if the party learns that in some material respect the disclosure

or response is incomplete or incorrect." *Id.*  Parties are required to supplement

disclosures promptly and "without the need for a request from opposing counsel or

an order from the court." *Jones v. Travelers Cas. Ins. Co. of America*, 304 F.R.D.

677, 679 (N.D. Cal. 2015).  The duty to supplement includes not just information,

but also documents to the extent called for by a prior discovery request. *See United

States v. Boyce*, 148 F.Supp.2d 1069, 1088 (S.D. Cal. 2001).

Under the discovery rules, a party may not use evidence at trial that it failed

to disclose under Rule 26(a) and failed to produce during discovery:

> A party that without substantial justification fails to
> disclose information required by Rule 26(a) or 26(e)(1), or
> to amend a prior response to discovery as required by Rule
> 26(e)(2), is not, unless such failure is harmless, permitted
> to use as evidence at a trial, at a hearing, or on a motion
> any witness or information not so disclosed.

Case No. 8:03-cv-01742 CJC (ANx)
*MOTION IN LIMINE NO. 4 RE SCOPE OF DAMAGES*

Fed. R. Civ. Proc. 26(a).

Rule 37(c)(1) "gives teeth" to the discovery rules by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed. *Yeti By Molly, Ltd. v. Deckers Outdoor*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) has been described as a "self-executing," "automatic" sanction to "provide a strong inducement for disclosure of material. . . ." *Id.* (*citing* Fed. R. Civ. Proc. 37 Advisory Committee's Note (1993).) Thus, "[c]ourts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." *Id.* (citations omitted); *see also Wong v. Regents Of University Of California*, 379 F.3d 1097, 1105 (9th Cir. 2004) (affirming district court's exclusion of testimony by late-disclosed supplemental expert).

Under Rule 37(c)(1), undisclosed information may be introduced only if the parties' failure to disclose the required information is substantially justified or harmless. OCWD's failure to disclose damages it now seeks to recover against Defendants is neither substantially justified nor harmless. In March 2011, almost six years ago, counsel for OCWD unequivocally confirmed that OCWD had already disclosed the entirety of its damages and remedies it will seek at trial in this case. (Roy Dec., Ex. 3, pp. 143-144 [3/16/11 Hearing Tr. p. 8:11-19, 12:2-9].)

In fact, more than five years ago in October of 2011, the MDL court refused to consider evidence of costs for bore hole drilling and depth-specific sampling that OCWD claimed to have incurred after the close of discovery in this action, but only disclosed during summary judgment briefing. *In re MTBE*, 279 F.R.D. 131, 138 & n. 61 (S.D.N.Y. Oct. 25, 2011). The MDL court further instructed OCWD that, if it wished to seek such costs as damages, it would have to request that discovery be re-opened and that OCWD should raise the issue during the next case management conference if it wanted to do so. *Id.* OCWD never raised the issue again. (Roy Dec., ¶ 7); *In re MTBE*, 67 F. Supp. 3d 619, 634 (S.D.N.Y. 2014).

Defendants anticipate that OCWD will argue that it is entitled to recover all of

1    its costs through the date of judgment, regardless of whether such costs were
2    disclosed to Defendants, in light of the Court's recent ruling denying Defendants'
3    summary judgment motion and finding that damages incurred during the pendency
4    of the action can be recoverable under a continuing nuisance theory.  Nothing in the
5    Court's ruling, however, excuses OCWD from its duty under the Federal Rules of
6    Civil Procedure to disclose and affirmatively supplement its disclosures promptly
7    and "without the need for a request from opposing counsel or an order from the
8    court."  *Jones*, 304 F.R.D. at 679.  At no time did OCWD do so.  (Roy Dec., ¶ 7.)
9    Accordingly, it must be precluded from offering evidence of these undisclosed costs
10   at the Plume 2 trial.

11          The prejudice to Mobil if OCWD is permitted to offer evidence of
12   undisclosed costs at trial is clear.  As the MDL court recognized in 2011 when
13   OCWD first attempted to seek damages that were not disclosed as required, "it
14   would be unfair and prejudicial to allow OCWD to rely on these new facts at this
15   stage.  Defendants have not had a chance to seek discovery on any of this new
16   evidence…."  *In re MTBE*, 279 F.R.D. at 138.  The MDL court instructed OCWD to
17   seek leave to re-open discovery if it intended to seek recovery of its previously
18   undisclosed damages.  It did not.

19   **B.     OCWD's Litigation Costs Should Be Excluded At Trial.**

20          OCWD should be barred from introducing evidence of its litigation costs at
21   trial.  Such evidence is not relevant to any of OCWD's claims and will
22   unnecessarily prolong the trial, confuse the jury, and unfairly prejudice Defendants.
23   It is well-settled that a party is only entitled to recover litigation costs <u>if</u> it is deemed
24   to be the prevailing party after trial (and even then, the types of costs that are
25   recoverable are extremely limited).  *See* Fed. R. Civ. Proc. 54; Central District Local
26   Rule 54-1.  As a result, the jury should not hear evidence regarding litigation costs.
27   Fed. R. Evid. 402; *see, also, Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d
28   10, 34 n. 18 (Fed. Cir. 2012) ("It is beyond debate that juries may not award

-10-

litigation costs….”); *Hilborn v. Metropolitan Group Prop. & Cas. Ins. Co.*, 2014 U.S. Dist. LEXIS 113996, *8 (D. Idaho 2014) (granting motion *in limine* to exclude litigation costs as irrelevant to issues to be decided by jury).  Despite the clear authority barring litigation costs at trial, OCWD repeatedly references such costs as part of its damages, necessitating an *in limine* order on this subject.

Among other litigation costs, OCWD routinely includes the costs associated with litigation consultants hired to help OCWD and its counsel assess potential claims against potential defendants.  (Roy Dec., Ex. 5, pp. 166-176 [Supp. Resp. p. 8-18].)  The work performed by Komex is a prime example of this.  OCWD hired Komex to evaluate various release sites at gasoline stations within the OCWD’s boundaries.  (Roy Dec., Ex. 6, p. 249 [5/27/05 Komex Scope of Work Proposal p. 1.)  The scope of work for Komex states that the consultant was being used “**in support of litigation related to Methyl tertiary Butyl Ether (MTBE) contamination**.”  (*Id.* (emphasis added).)  Reference to the litigation is sprinkled throughout the Komex invoices.  (*See, e.g.,* Roy Dec., Ex. 7, pp. 267-269 [Komex Invoices pp. OCWD-MTBE-001-209360, OCWD-MTBE-001-209368, OCWD-MTBE-001-209451.)  When presented with the costs incurred by OCWD to fund Komex’s work, the MDL judge observed that “**there is no evidence that the District has done anything with these consultant reports outside of this litigation**.”  *In re MTBE*, 824 F.Supp.2d 524, 535 (2011) (emphasis added).  Nevertheless, the costs associated with Komex’s work are routinely included in OCWD’s responses to discovery regarding damages.  (*See, e.g*., Roy Dec., Ex. 5, pp. 165-166 [Supp. Resp. pp. 7-8].)  Hargis + Associates, Friedman & Bruya, Christian Zarn, and X-NTH/Exp. U.S. Services are also litigation consultant costs that should be excluded at trial.  (Roy Dec., Ex. 8, pp. 271-276 [2/2/10 Hargis Potential Change Order p. OCWD-MTBE-HARGIS-404378 through 404383]; Ex. 9, p. 278 [8/27/10 Friedman & Bruya Purchase Order p. OCWD-MTBE-001-45691]; Ex. 10, pp. 280-302 [12/14/10 X-NTH Proposal p. OCWD-MTBE-PEXP-

1    BROWN-000061 through 000083].)

2         Similarly, OCWD appears to be including in its damages claim its own

3    internal operating costs of dealing with this litigation, such as monitoring and

4    sampling drinking water related to stations at issue in the litigation, and staff time

5    reviewing reports concerning ongoing investigations and remediation of MTBE and

6    TBA releases.  (Roy Dec., Ex. 5, pp. 181-183 [Supp. Resp. pp. 23-25].)

7         Unless otherwise authorized by statute or contract, the types of costs that may

8    be awarded under Federal Rule of Civil Procedure 54(d) are limited to those

9    enumerated in 28 U.S.C. § 1920.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482

10   U.S. 437, 441-42 (1987).  Section 1920 permits recovery of the following categories

11   of cost only: (1) clerk's and marshal's fees; (2) fees for transcripts necessarily

12   obtained for use in the case; (3) printing and witness fees, as set in 28 U.S.C. 1821;

13   (4) fees for exemplification and the costs of making copies of any materials where

14   the copies are necessarily obtained for use in the case; (5) docket fees; and

15   (6) compensation of court appointed experts, interpreters, and special interpretation

16   services.  Thus, a party's internal operating costs incurred while dealing with its

17   own litigation is not recoverable under the law.

18        Even if these costs were recoverable, however, they are not relevant to the

19   issues that will be decided by the jury (because litigation costs are awarded post-trial

20   by the Court, not jury) and thus, not admissible at trial.  Furthermore, their inclusion

21   at trial will unnecessarily delay and prolong the trial by requiring unnecessary

22   examination of witnesses and introduction of evidence not relevant to the merits of

23   OCWD's claims.  Additionally, allowing litigation costs at trial poses undue risk

24   that the jury will be confused by the evidence and improperly award such costs as

25   damages, resulting in a double-recovery and windfall for OCWD.  Accordingly,

26   OCWD should be precluded from presenting evidence of its litigation costs as

27   damages.

28

**C.      OCWD's Ordinary Business Costs Should Be Excluded At Trial.**

OCWD is not permitted to recover its ordinary investigation costs and should be precluded from presenting evidence of such costs to the jury at trial.  Under the OCWD Act, OCWD has the power and authority to "[t]ransport, reclaim, purify, treat, inject, extract, or otherwise manage and control water for the beneficial use of persons or property within the district and to improve and protect the quality of the groundwater supplies within the district."  Cal. Water Code App. § 40-2.  Additionally, the OCWD has the power "[t]o carry on technical and other investigations of all kinds, necessary to carry out this act…."  *Id.*

Several provisions of the OCWD Act specifically permit or authorize OCWD, as part of its business, to investigate water quality in order to fulfill its mission.  For example, for purposes ascertaining the feasibility, necessity, and benefit of constructing water treatment or purification facilities, storage sites, pumping stations, and injection wells, among other things, OCWD can "cause engineering investigations, surveys, examinations, drawings, plans, and reports to be made as shall furnish the proper basis for the purpose or project and its estimated cost."  *Id.*, § 40-20.6(a)-(b).  Moreover, each year, OCWD's engineers must conduct an investigation and report on groundwater condition within OCWD's district.  *Id.*, § 40-25.  Furthermore, under section 40-8(a), OCWD is specifically authorized to "conduct any investigations of the quality of the surface and groundwaters within the district which the district determines to be necessary and appropriate to determine whether those waters are contaminated or polluted."  This investigation is part of OCWD's ordinary course of business.

It is well-settled under California law (and has been confirmed twice by the MDL court in in this case), however, that OCWD may only recover for remedial work, not other activities such as testing of wells and commissioning of consultant reports.  *See* Cal. Water Code App. § 40-8(c) (recovery is allowed for "the reasonable costs actually incurred in cleaning up or containing the contamination or

1  pollution….");*In re MTBE*, 824 F. Supp. 2d at 534-35 ("The plain language of the

2  Act" states that "[t]he costs incurred for remediation are recoverable, but the costs

3  incurred for investigation are not."); *In re MTBE*, 67 F. Supp. 3d 619, 630, 634

4  (S.D.N.Y. 2014) ("Under the OCWD Act, the District may recover reasonable costs

5  incurred to perform cleanup, abatement, or remedial work.  In this action, I

6  previously granted summary judgment in Defendants' favor at fourteen sites

7  because under the Act, costs associated with testing production wells and

8  commissioning reports are not related to remediation.")

9         As both the OCWD Act and the law of this case make clear, water quality

10  investigation is part of OCWD's ordinary and ongoing business and is not

11  recoverable as damages.  Accordingly, the Court should issue an order precluding

12  OCWD from all costs listed in the charts on pages 5-6, *supra*, because those costs

13  pertain solely to the investigation of contamination during the pendency of this

14  litigation to support its experts, not cleanup of contamination.

15  **D.     OCWD Should Be Required To Link Damages To Plume 2 Stations In Order For Such Evidence To Be Admitted At Trial.**

16

17         In order to claim an item of damages during the Plume 2 trial, OCWD should

18  be required to have already attributed, allocated, or otherwise apportioned that item

19  to the two Mobil sites at issue.  Broad claims of basin-wide damage that have not

20  been directly attributed to alleged releases at the Plume 2 stations should not be

21  admitted at trial.  Without evidence of a causal link between an item of damage and

22  a release at a specific site, such evidence is irrelevant to the claims asserted and

23  unduly prejudicial to Mobil.

24         **1.     Causation Is A Necessary Element of Continuing Nuisance.**

25         Causation is a necessary element of any nuisance claim.  *See, e.g.,* CACI No.

26  2021 (stating that plaintiff must prove, among other things, "that [defendant]'s

27  conduct was a substantial factor in causing [plaintiff]'s harm); Restatement 2d. of

28  Torts, § 822 ("one is subject to liability for a private nuisance if, but only if, his

-14-

1  conduct is a legal cause of an invasion of another's interest…").

2       This causal nexus extends to proof of damages caused by the nuisance.  *See*

3  CACI No. 3900 ("damages must include an award for each item of harm <u>that was</u>

4  <u>caused by [defendant]'s wrongful conduct</u>…"); *see also* CACI No. 2013 ("[plaintiff]

5  may recover damages… for the annoyance and discomfort <u>caused by the injury</u>…");

6  *Chaparkas v. Webb*, 178 Cal. App. 2d 257, 260 (1960).  Thus, a plaintiff is only

7  entitled to recover damages for harm sustained as a result of the defendant's conduct

8  specifically, as opposed to damages for harm created by others.

9       This principle has been repeatedly affirmed, regardless of the specific causes

10 of action asserted.  For example, in *Chaparkas v. Webb*, the court of appeal held that

11 "[w]hile a defendant is liable for all the damage that his tortious act proximately

12 causes to the plaintiff, regardless of whether or not it could have been anticipated,

13 nevertheless a proximate causal connection must still exist between the damage

14 sustained by the plaintiff and the defendant's wrongful act or omission, and the

15 detriment inflicted on the plaintiff must still be the natural and probable result of the

16 defendant's conduct."  *Chaparkas*, 178 Cal. App. 2d at 260; *see also Vanderbilt*

17 *Growth Fund, Inc. v. Superior Court*, 105 Cal. App. 3d 628, 637 (1980) (affirming

18 summary judgment in favor of defendant where plaintiff could not prove the extent

19 of damages caused by defendant's conduct); *Carrell v. Fred Olsen Line Agency,*

20 *Ltd.*, 213 Cal. App. 2d 601, 606 (1963) (finding court properly refused to award

21 damages for injuries not causally linked to defendant's conduct).  Similarly, in *Helm*

22 *v. United States*, 2015 U.S. Dist. LEXIS 15472 (E.D. Cal. 2015), the district court,

23 citing *Chaparkas*, found that the defendant was entitled to summary judgment on

24 the plaintiff's claims to the extent the plaintiff could not produce evidence linking

25 his injury to the defendant's conduct upon which the lawsuit was premised.  *Id.* at

26 *9-11.

27

28

2.      **OCWD's Distorted Theory Of Joint & Several Liability Cannot Overcome Its Obligation To Connect Specific Conduct To Specific Items of Damages.**

Defendants expect that OCWD will argue that the doctrine of joint and several liability allows OCWD to overcome its lack of evidence linking a defendant's conduct to a specific item of damage.  Specifically, OCWD will argue that contamination from sites has comingled into plumes, that these plumes threaten production wells, and that because the contamination is commingled, OCWD need not trace damage to specific sites and releases.  Importantly, OCWD does <u>not</u> contend that the various plumes it has designated in litigation have comingled with each other (i.e., Plume 2 is a standalone plume, not alleged to be commingled with any other focus plume).  OCWD's creative theory is not consistent with the law. OCWD must be required to trace a particular damage item to a specific site in order to present that damage item to the jury.  Alternatively, at minimum, OCWD should be required to trace that damages item to a specific plume.

California Civil Code section 1431 states "[a]n obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several."  Cal. Civ. Code § 1431.  Thus, courts have held that "when the damages cannot be apportioned between two tortfeasors or between tortious and nontortious causes, a tortfeasor whose acts have been a substantial factor in causing the damages is legally responsible for the whole." *California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1036 (2009); *see also In re Methyl Tertiary Butyl Ether MTBE Products Liability Litigation*, 824 F. Supp. 2d 524, 543 (S.D.N.Y. 2011).

Joint and several liability, however, applies only where defendants act in concert with one another to cause a single, indivisible harm.  Where defendants' independent actions contribute to separate harms to the plaintiff, they cannot be held jointly and severally liable.  For example, in *California Orange Co. v. Riverside Portland Cement Co.*, 50 Cal. App. 522 (1920), the plaintiff operated an orange grove that was situated halfway between two cement mills, one owned by California

SMRH:480325262.2                                           *MOTION IN LIMINE NO. 4 RE SCOPE OF DAMAGES*

Portland Cement and the other by the defendant. *Id.* at 523. Cement dust from each mill had settled on plaintiff's orange trees, causing significant damage to the trees, and plaintiff sought to hold the one defendant jointly and severally liable for the entire harm. *Id.* at 523-524. However, the court held that the two cement mills were not joint tortfeasors. Instead, the court stated that "[t]heir respective torts… were several when committed, and did not become joint merely because of a commingling of the dust from the respective plants and a union of the consequences proceeding from the several and independent tortious acts. *Id.* at 524. For this reason, the court found that the defendant cement mill could be held "liable for only such proportion of the total damages resulting from the commingled dust emitted into the atmosphere from the plants of the two cement companies as was caused by its own plant." *Id.*

Similarly, in *Connor v. Grosso*, Connor sought damages against her neighbor, Grosso, who had dumped dirt on Connor's property. However, prior to Grosso's actions, other individuals had independently dumped dirt onto Connor's property. Connor sought to hold Grosso liable for removal of all of the dirt that had been dumped on her property, regardless of who had dumped it. 41 Cal. 2d 229 (1953). The court rejected Connor's claim, stating that because "Grosso did not act in concert with the other persons dumping dirt on the Connor land, he cannot be required to pay for removal of the dirt dumped by them." *Id.* at 232. Accordingly, Connor was only permitted to seek compensatory damages against Grosso for removal and any damage caused by the amount of dirt he dumped onto the property.

Moreover, in *I-CA Entertainment, Inc. v. Palram Americas, Inc.*, I-CA sued defendants Palram and Plasgad for intentional interference with contractual relations. I-CA had separate contracts with each defendant and alleged that Palram had interfered with I-CA's contract with Plasgad and vice versa. In response to the trial court's request for briefing on damages, I-CA argued that it was entitled to a finding of joint and several liability against the two defendants, rather than separate

awards against each defendant individually.  235 Cal. App. 4th 257 (2015).  I-CA claimed that it had suffered lost profits as a result of each defendant's conduct and that each defendant should be held liable for the entire amount of lost profits.  The court rejected I-CA's argument, finding that "independent wrongs do not become joint even if the damages resulting from the wrong add up to one particular type of damage." *Id.* at 273.  Thus, the court found that it was appropriate for the jury to make separate determinations of liability and damages against each defendant.  *Id.*

Furthermore, courts have authority to require apportionment of damages.  For example, in *Griffith v. Kerrigan*, Griffith owned an orchard situated between a rice field owned by Kerrigan and a canal owned by Sutter Butte Canal Company. Historically, there had been water seepage from the canals, but not enough to cause damage to Griffith's orchard.  However, after Kerrigan planted the rice field, seepage from the field combined with seepage from the canal, causing an overflow onto Griffith's property that damaged the orchard.  109 Cal. App. 2d 637 (1952). Griffith sought to hold Kerrigan jointly and severally liable for all of the harm caused by the seepage even though the seepage from Kerrigan's rice field would not have caused damage to Griffith's property but for the seepage from the canal. Citing *California Orange Co.* as precedent, the court found that it was not appropriate to hold Kerrigan responsible for the entire loss that occurred as a result of seepage from Kerrigan's property and the canal combining.  Thus, the court found that, under such circumstances, apportionment of damages was required.  *Id.* at 639-40.  If OCWD has not apportioned damages as part of its discovery responses and expert discovery to the two stations in Plume 2, it should not be permitted to introduce evidence of those damages at trial.

### 3.   Past Costs Attributed To Stations Other Than Those In Plume 2 Should Be Excluded At Trial.

OCWD has identified only one past cost ($33,415.52 paid to Komex) that it attributed to a specific station, G&M Oil Station #4, which is not in Plume 2.  (Roy

Dec., Ex. 5, p. 166 [Supp. Resp. p. 8].)  This cost is, by OCWD's own admission or

documentation, not relevant to Plume 2 and should therefore be excluded at trial.

**4.    General Past Costs That OCWD Refuses To Allocate or Apportion to Plume 2 Should Be Excluded At Trial.**

There are a number of other costs for which OCWD refused to attribute,

allocate, or apportion to the stations and plumes at issue in the case.  (Roy Dec.,

Ex. 5, p. 164 [Supp. Resp. p. 6].)  These, too, should be excluded at trial.

Specifically, the following cost items should be excluded.

| Total Cost | Description | Basis for Exclusion at Trial |
|---|---|---|
| $600,000 | Komex pursuant to May 18, 2005 agreement for Phase 1 Vulnerability Assessment.  (Roy Dec., Ex. 5, p. 272 [Supp. Resp. p. 14].) | Failure to allocate. |
| $87,563 | Komex for Phase 1 Preliminary Assessment and Environmental Consulting Support.  (*Id.*, p. 173 [Supp. Resp. p. 15].) | Failure to allocate. |
| $2,551,202 | Hargis + Associates for MTBE Threat Assessment Support Services.  (*Id.*, pp. 173-174 [Supp. Resp. p. 15-16].) | Failure to allocate. |
| $94,778 | Friedman & Bruya for testing analysis.  (*Id.*, pp. 176-181 [Supp. Resp. pp. 18-23].) | Failure to allocate. |
| $1,643 | Christian Zarn, a hydrogeologist consultant.  (*Id.*, pp. 175-176, 182 [Supp. Resp. pp. 17-18, 24].) | Failure to allocate costs to specific stations. |
| $470,145 | X-NTH, Inc./Exp. U.S. for environmental consulting support.  (*Id.*, pp. 174-175 [Supp. Resp. pp. 16-17].) | Failure to allocate. |
| $1,624,281 | Staff and other internal costs associated with MTBE investigation, assessment, and remediation.  (*Id.*, pp. 172, 181, 183 [Supp. Resp. p. 14, 23, 25].) | Failure to allocate. |
| $14,675 | H2O R2 Consultants' Work (*Id.*, p. 164 [Supp. Resp. p. 6].)[5] | Failure to allocate. |

It would be unfair and prejudicial to allow OCWD to introduce the entire sum of

---

[5]    The cost associated with the work performed by H2O R2 is not included in OCWD's chart regarding the costs it seeks to recover (Roy Dec., Ex. 5, p. 164 [Supp. Resp. p. 6]) and thus it is not clear whether OCWD intends to pursue these costs at trial.  As detailed in the briefing on the motion for summary judgment, OCWD has never attempted to allocate any of the H2O R2 costs to Plume 2. (Docket No. 125-1, pp. 9-10.)

Case No. 8:03-cv-01742 CJC (ANx)
*MOTION IN LIMINE NO. 4 RE SCOPE OF DAMAGES*

SMRH:480325262.2

costs for work covering all stations and plumes throughout the basin against only Mobil.  OCWD should only be permitted to introduce such evidence to the extent it has already apportioned or otherwise allocated these "global" damages to each station and/or plume.  Allowing OCWD to introduce the entirety of these "global" damages against the Plume 2 defendant only risks confusion by the jury, which might award the entirety of the damages against the Plume 2 defendant.  It also risks later inconsistent verdicts with respect to responsibility for these costs and the high potential for a windfall recovery by OCWD.

**E.    Evidence Regarding "Future" Costs Not Supported By Expert Testimony Should Be Excluded At Trial.**

According to OCWD's interrogatory responses, OCWD claims it will have to spend $32 million or $34 million dollars basin-wide (including $2.9 million in the vicinity of what it defined as "Plume 2") to install monitoring wells near the Focus Sites.  (Roy Dec., Ex. 5, pp. 202-204 [Supp. Resp. p. 44-46].)  Although afforded ample opportunity, OCWD never designated an expert to validate the need for these wells or the accuracy of this estimate.[6]  Because OCWD has failed to produce an expert witness on this subject, all evidence and testimony regarding the proposed installation of monitoring wells at the focus plumes should be excluded at trial.

**1.    The Rules of Evidence Require That OCWD Provide Expert Testimony To Substantiate Its Future Damages Claims.**

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise...

Fed. R. Evid. 702.  With respect to the calculation of future costs in the context of

---

[6]    As noted in Section III.D, *supra*, if OCWD is permitted to introduce evidence of these costs at all, it should be limited to only those costs associated with the Plume 2 stations.

environmental monitoring and cleanup, expert witness testimony is essential to substantiate a damages claim.  *See* Fed. R. Evid. 702; *California v. Kinder Morgan Energy Partners, L.P.*, 2016 U.S. Dist. LEXIS 15174 at \*29-30 (S. D. Cal. Feb. 2, 2016) (expert testimony required to establish plaintiff's entitlement to damages and the calculation of those damages in contamination case).  Without expert testimony to prove OCWD's $34 million cost estimate, it is proper for the Court to exclude OCWD's claim for damages.  *See Kinder Morgan*, 2016 U.S. Dist. LEXIS 15174 at \*29-33 (damages claim dismissed because plaintiff would be unable to prove damages at trial without expert opinion or testimony).

### 2.    OCWD Failed To Designate An Expert Witness To Address OCWD's Claim For $34 Million.

OCWD seeks $34 million (sometimes also referred to as $32 million) in future costs for installation of monitoring wells to delineate each bellwether plume. (Roy Dec., Ex. 5, p. 202-204 [Supp. Resp. pp. 44-46].)  However, not one of the experts designated by OCWD has provided an expert report or deposition testimony specifically addressing OCWD's claim for damages for monitoring wells at the focus plumes.

Unlike the future investigation and remediation costs OCWD seeks for the two Mobil stations in the Plume 2 trial, which are discussed in the Messrs. Brown and Stollar's expert reports and testimony, OCWD has not designated any expert to testify regarding the alleged future costs OCWD it claims is needed for installation of monitoring wells.  Stollar's report, which addresses both of the Mobil stations at issue in the Plume 2 trial, is devoid of any information regarding the need for, or number of, monitoring wells or associated costs.  (*See, generally,* Roy Dec., Exs. 19, 20.)

At deposition, neither Stollar nor Brown was able to provide any detail on these costs.  For example, Stollar testified at length regarding the need for further investigation and delineation at Mobil #18-HDR, but did not provide any opinion

1   regarding the number of site-related wells needed or the number of intermediate

2   wells for Plume 2.  (*See* Roy Dec., Ex. 21, pp. 606-607 [1/10/12 Stollar Depo Tr.

3   pp. 215:22-219:11].)  Likewise, Stollar testified that he believes there is insufficient

4   data at the Mobil 18-JMY site, but provided no opinion regarding the need for, or

5   number or location of monitoring wells to further delineate the plume.  (Roy Dec.,

6   Ex. 22, pp. 611-612 [1/11/12 Stollar Depo Tr. pp. 233:25-235:11].)

7          **3.    OCWD's Lay Witness Employees Cannot Substantiate The $34
              Million Claims Because They Will Only Provide Impermissible**
8          **Speculation Regarding the Future Cost and Need for Monitoring
              Wells.**

9

10          To the extent OCWD intends to have one of its employees opine on the

11   necessity of monitoring wells and the calculation of damages resulting from

12   installing the wells, this testimony is improper and should be excluded because it is

13   not permissible expert testimony for several reasons.

14          First, none of OCWD's employees possess the expertise required to determine

15   whether monitoring wells are required or how much they will cost.  At most, a long-

16   term employee of OCWD can only testify as a fact witness such that any opinion on

17   the technical requirements and costs for monitoring wells is impermissible lay

18   speculation.  *See* Fed. R. Evid. 701(c) ("If a witness is not testifying as an expert,

19   testimony in the form of an opinion is limited to one that is not based on scientific,

20   technical, or other specialized knowledge within the scope of Rule 702."); *Stockton*

21   *East Water Dist. v. United States*, 109 Fed. Cl. 760, 782, n. 20 (Fed. Cl. 2013)

22   (motion *in limine* granted to limit testimony of long-time, experienced employee of

23   plaintiff water district who did not have the background to qualify as an expert

24   witness on water usage by a city).  Any opinion that an OCWD employee now

25   proffers is therefore based either on no information, or unreliable information, in

26   violation of Federal Rule of Evidence 702.  *See McGlinchy v. Shell Chemical Co*.,

27   845 F.2d 802, 807 (9th Cir. 1988) (proper to exclude studies and testimony that

28   were no more than speculation of amount of damages, resting on unsupported

1  assumptions and unsound extrapolation and lacking documentation for basis for

2  conclusions).

3      Roy Herndon, OCWD's chief hydrogeologist, was deposed extensively

4  regarding OCWD's claimed future costs for installation of monitoring wells.  He

5  confirmed that these costs are separate and distinct from the investigation and

6  remediation costs set forth in the Brown and Stollar expert reports and that those

7  experts' testimony does not address these particular costs.  (Roy Dec., Ex. 12, p. 324

8  [8/13/12 Herndon Depo Tr. pp. 297:11-298:22].)  Furthermore, he confirmed that

9  OCWD had undertaken no investigation or analysis, and had not consulted any

10  experts in order to determine the need for installation of five monitoring wells at

11  each station and six intermediate wells per plume.  (*Id.*, pp. 319-324 [8/13/12

12  Herndon Depo Tr. pp. 275:5-286:2; 293:18-296:2].)  Instead, Herndon testified that,

13  regardless of the number of monitoring wells already installed at each site, the

14  District categorically decided it needed five additional wells in order to determine

15  what investigation or remediation might be necessary at each site.  (*Id.*, pp. 320-321

16  [8/13/12 Herndon Depo Tr. pp. 279:13-282:17].)  Herndon confirmed the same is

17  true for the six intermediate wells for each plume.  (*Id.*, p. 322 [8/13/12 Herndon

18  Depo Tr. pp. 284:7-285:12].)  In fact, Herndon testified that, aside from the three

19  stations identified by Brown and Stollar (including Mobil #18-HDR), OCWD has

20  not concluded that additional cleanup is needed at any other station.  (*Id.*, p. 325

21  [8/13/12 Herndon Depo Tr. pp. 300:6-301:23].)

22      Likewise, David Bolin, an OCWD hydrogeologist, testified that he is not an

23  expert on that subject (Roy Dec., Ex. 14, p. 342 [10/20/08 Bolin Depo Tr.

24  pp. 1244:11-1245:21]), and that OCWD would need to retain additional expertise in

25  order to evaluate the plumes and determine whether and what action was necessary.

26  (*Id.*, Ex. 13, pp. 335-336 [7/30/08 Bolin Depo Tr. pp. 248:15-251:24].)  He

27  confirmed that, although installation of monitoring wells is one potential option, it

28  was premature to say that they are necessary at this time.  (*Id.*, p. 336 [7/30/08 Bolin

SMRH:480325262.2

1  Depo Tr. p. 249:9-18].)

2      <u>Second</u>, even if one of OCWD's employees could be qualified as an expert to

3  provide testimony regarding the need and cost of installing monitoring wells in the

4  future, OCWD failed to provide an expert report on this subject and is therefore

5  barred from using that employee as an expert at trial.  The MDL court addressed the

6  need for written reports from OCWD's employees at the February 15, 2011 status

7  conference.  During the status conference, Defendants objected to OCWD's

8  designation of more than 400 potential experts, including numerous OCWD

9  employees.  After hearing the issues, Judge Scheindlin confirmed that, if OCWD

10  wanted to use expert testimony from an OCWD employee, that witness was required

11  to prepare a written expert report on the subject.  (Roy Dec., Ex. 16, pp. 351-352

12  [2/15/11 Hearing Tr. pp. 17:13-22:20].)  Expert reports were due April 15, 2011.

13  (Roy Dec., ¶ 14, Ex. 17, p. 355 [CMO 82, p. 1].)  Despite the clear instruction from

14  Judge Scheindlin and the deadline, OCWD never served an expert report written by

15  any OCWD employee, including Mr. Herndon.  Indeed, after the deadline passed,

16  Defendants sent a letter to OCWD confirming that a report from Mr. Herndon had

17  not been received and that Mr. Herndon would not be offering expert testimony at

18  trial.  (Roy Dec., Ex. 18, p. 359 [4/20/11 Letter p. 2].)  OCWD never responded or

19  suggested that it intended to offer expert testimony from OCWD employees nor did

20  OCWD seek leave of the court for additional time to prepare the required reports.

21  (Roy Dec., ¶ 14.)  As a result, OCWD cannot rely on its employees for purported

22  expert testimony.[7]

23  ### IV.  CONCLUSION

24      Mobil respectfully request the Court grant this Motion *in Limine* and exclude

25  from trial in this matter any and all testimony, references to testimony, evidence or

26  arguments regarding damages not disclosed prior to the discovery cutoff, litigation

27  

28  
_____
[7]   *See also,* Mobil's concurrently filed Motion *In Limine* No. 8 To Prevent Roy
Herndon And David Bolin From Testifying As Experts.

1  costs, damages not causally linked to the Plume 2 stations, ordinary business costs,

2  and future damages not supported by expert testimony.

3

4  Dated:  January 9, 2017

5                                 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6                          By       /s/ Whitney Jones Roy

7                                      JEFFREY J. PARKER
                                      WHITNEY JONES ROY
8                                      Attorneys for Defendant
                                      EXXONMOBIL OIL CORPORATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28